Eastern District of Kentucky
**F I L E D**

JAN 13 2020

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

**CRIMINAL ACTION NOS.**   5:18-CR-81-REW
0:18-CR-05-REW

UNITED STATES OF AMERICA                                         PLAINTIFF

V.                          **PLEA AGREEMENT**

ADRIAN MITAN                                                      DEFENDANT

\* \* \* \* \*

The United States Attorney's Office for the Eastern District of Kentucky (USAO-EDKY), the United States Attorney's Office for the Western District of North Carolina (USAO-WDNC), the Computer Crimes and Intellectual Property Section (CCIPS), and the Defendant, ADRIAN MITAN, individually and through counsel, pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, agree as follows:

1. **Offenses of Conviction**: The Defendant agrees to plead guilty to

    a. Count 1 of the Indictment currently pending against him in the Eastern District of Kentucky in Case No. 5:18-CR-81-REW, Conspiracy to Commit a RICO Offense in violation of 18 U.S.C. § 1962(d);

    b. Count 1 of the Indictment currently pending against him in the Eastern District of Kentucky in Case No. 0:18-CR-05-REW, Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h); and

    c. Count 1 of the Indictment currently pending against him in the Western District of North Carolina in Case No. 3:17-CR-17-FDW (WDNC), Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1349.

Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss the remaining counts as against the Defendant in each case.

2. **Elements of the Offenses**:

The essential elements of 18 U.S.C. § 1962(d) are:

>  (a) That the defendant knowingly agreed to conduct or participate, directly or indirectly, in the affairs of the charged enterprise through a pattern of racketeering activity;
>
>  (b) That the enterprise was established;
>
>  (c) That the enterprise engaged in, or its activities affected, interstate or foreign commerce; and
>
>  (d) That the defendant was employed by, or associated with, the enterprise.

The essential elements of 18 U.S.C. § 1956(h) are:

>  (a)  That two or more people agreed to try to accomplish a common and unlawful plan to:
>
>  >  a. Conduct financial transactions knowingly involving the proceeds of a specified unlawful activity (that is, wire fraud and conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349), in a manner affecting interstate and foreign commerce,
>  >     i.  With the intent to promote the carrying on of such specified unlawful activity; or
>  >     ii. In order to conceal and disguise the nature, location, source, ownership, and control of the proceeds; or
>  >
>  >  b. Knowingly transport, transmit, and transfer monetary instruments and funds that are the proceeds of a specified unlawful activity (that is, wire fraud and conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349), from a place in the United States to or through a place outside the United States,
>  >     i.  With the intent to promote the carrying on of a specified unlawful activity; or
>  >     ii. In order to conceal or disguise the nature, location, source, ownership or control of the proceeds of specified unlawful activity; and

(b) The Defendant knew about the plan's unlawful purpose and willfully joined in it.

The essential elements of 18 U.S.C. § 1349 are:

(a) That the defendant and one or more person(s) agreed to commit bank fraud, that is:

    a. That the defendant intentionally executed a scheme to obtain money or other property owned by or in the control of a financial institution through false or fraudulent pretenses, representations, or promises;

    b. That the scheme included a material misrepresentation or concealment of a material fact; and

    c. That the financial institution was federally insured; and

(b) That the Defendant knowingly and voluntarily joined this agreement.

3. **Penalties**:

The statutory penalties for 18 U.S.C. § 1962(d) are:

(a) Imprisonment for not more than 20 years;
(b) A fine of $250,000 or twice the gross gain or loss;
(c) A term of supervised release of not more than 3 years;
(d) Forfeiture; and
(e) A mandatory special assessment of $100, which the Defendant will pay to the U.S. District Court Clerk at the time of the entry of the plea.

The statutory penalties for 18 U.S.C. § 1956(h) are:

(a) Imprisonment for not more than 20 years;
(b) A fine of $500,000 or twice the gross gain or loss;
(c) A term of supervised release of not more than 3 years;
(d) Forfeiture; and
(e) A mandatory special assessment of $100, which the Defendant will pay to the U.S. District Court Clerk at the time of the entry of the plea.

The statutory penalties for 18 U.S.C. § 1349 are:

(a) Imprisonment for not more than 30 years;
(b) A fine of not more than $1,000,000 or twice the gross gain or loss;
(c) A term of supervised release of not more than 5 years;
(d) Forfeiture; and
(e) A mandatory special assessment of $100 applies, which the Defendant will pay to the U.S. District Court Clerk at the time of the entry of the plea.

4. **Transfer of WDNC Case for Plea and Sentencing**: The USAO-EDKY, USAO-WDNC, and Defendant agree to transfer the charges pending in the Western District of North Carolina against ADRIAN MITAN to the Eastern District of Kentucky for plea and sentencing pursuant to Federal Rule of Criminal Procedure 20, and will execute any documents necessary for this transfer.

5. **Factual and Advisory Guidelines Stipulation**: The parties agree to the Statement of Facts set forth in Attachment A, and incorporate it here by reference. The Defendant agrees that the United States would prove the facts described in Attachment A beyond a reasonable doubt at trial. The Defendant also agrees that these facts establish the essential elements of the offenses to which he is pleading guilty. The parties further agree that the Statement of Facts provides the factual basis for the Defendant's plea, and to the following sentencing guideline calculation and range. This recommendation does not bind the Court, and the parties may object to or argue in favor of other calculations.

(a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2018, manual, will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 3D1.2(d), the counts of conviction should be grouped together, because the offense level is determined largely on the basis of the total amount of harm or loss. Pursuant to U.S.S.G. § 3D1.3(b), the applicable offense is U.S.S.G. § 2S1.1.

(c) Pursuant to U.S.S.G. § 2S1.1, the base offense level is the offense level applicable to the underlying wire fraud activity.

      (d)    Pursuant to U.S.S.G. § 2B1.1, the offense level is calculated as follows:

- The base offense level is 7 [U.S.S.G. § 2B1.1(a)(1)]
- Increase the offense level by at least 18 levels for a loss amount exceeding $3,500,000 [U.S.S.G. § 2B1.1(b)(1)(L)]. The Defendant does not agree to this enhancement and reserves the right to argue against its application at sentencing.
- Increase the offense level by 2 levels for involving 10 or more victims [U.S.S.G. § 2B1.1(b)(2)(A)(i)]
- Increase the offense level by 2 levels for a substantial part of the fraudulent scheme being committed from outside the United States [U.S.S.G. § 2B1.1(b)(10)(B)]
- Increase the offense level by 2 levels for use of device-making equipment and production of unauthorized access devices [U.S.S.G. § 2B1.1(b)(11)(A)(i), (iii)]

      (e)    Pursuant to U.S.S.G. § 2S1.1(b)(2)(B), increase the offense level by 2 levels, because the defendant was convicted of 18 U.S.C. § 1956.

      (f)    Pursuant to U.S.S.G. § 2S1.1(b)(2)(B), increase the offense level by 2 levels, because the defendant engaged in sophisticated laundering. The Defendant does not agree to this enhancement and reserves the right to argue against its application at sentencing.

      (g)    Pursuant to U.S.S.G. § 3B1.1(c), increase the offense level by 2 levels, because the Defendant was a leader in criminal activity. The Defendant does not agree to this enhancement and reserves the right to argue against its application at sentencing.

      (h) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

8. **Additional Obligations of the Defendant:**

   a. Restitution:

   i. The Defendant agrees to pay restitution in an amount determined at sentencing. The Defendant acknowledges that the Court shall determine a monthly payment schedule. In the event the Defendant is unable to pay completely the total amount of restitution owed prior to termination of the supervised release period, he agrees to make regular monthly payments toward such liability.

   ii. In furtherance of this agreement:

   1. The Defendant agrees to cooperate fully with the USAO-EDKY by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-

       level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

    2. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

  b. **Money Judgment**: The Defendant also agrees to the imposition of a money judgment in the amount of restitution determined at sentencing. The Defendant agrees he is liable for both the money judgment and restitution order.

9. **Waiver of Appeal**: In exchange for the concessions made by the USAO-EDKY, USAO-WDNC, and CCIPS in this plea agreement, the Defendant waives the right to appeal the guilty plea and the conviction. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

10. **Freedom of Information Act**: The Defendant waives all rights under the Freedom of Information Act relating to his investigation and prosecution and agrees not to file any request for documents. The Defendant also waives all rights he may have under

the Privacy Act of 1974, which prohibits the disclosure of records contained in a system of records without his written request or consent.

11. **Violation of Plea Agreement**: The Defendant agrees to abide by the terms of this agreement, including all of the conditions listed in U.S.S.G. § 3E1.1. The Defendant understands that in the event he violates this agreement, including by failure to accept responsibility for his conduct, the USAO-EDKY, USAO-WDNC, and CCIPS will be relieved of all of its obligations under this agreement and may institute any charges or sentencing recommendations that would otherwise be prohibited by this agreement, and the Defendant will not be relieved of any of his obligations under the plea agreement. In the event that the Defendant violates his plea agreement, the Defendant waives protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, and § 1B1.8(a) of the United States Sentencing Guidelines. Any statements made by the Defendant in the course of plea discussions, in any proceeding pursuant to Fed. R. Crim. P. Rule 11, and during any attempted cooperation with law enforcement authorities will be admissible against the Defendant without limitation in any civil or criminal proceeding. This section does not apply to statements made by the Defendant pursuant to a proffer agreement.

12. **Defendant's Acknowledgment**: The Defendant acknowledges that he has read and understands this plea agreement; that he accepts this plea agreement knowingly and voluntarily and not as a result of any force, threats, or promises, other than the promises in this plea agreement; that he has conferred with his attorney regarding this plea agreement and the facts and circumstances of his case, including the applicable law and potential

defenses, and that he is fully satisfied with the representation, advice, and other assistance of his attorney in this case. The Defendant understands that this Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

13. **Immigration Consequences**. The Defendant recognizes that pleading guilty may affect the Defendant's immigration status if the defendant is not a citizen of the United States. The Defendant understands that no one can predict with certainty the effect of the Defendant's convictions on the Defendant's immigration status. The Defendant nevertheless seeks to plead guilty, even if the consequence is the Defendant's automatic removal from the United States.

14. **Entire Agreement**: Apart from the written proffer agreement of July 11, 2019, the Consent to Transfer of Case for Plea and Sentence under Rule 20, and the supplement, this is the complete agreement of the parties, and supersedes all other promises, representations, understandings, and agreements between the parties.

ROBERT M. DUNCAN, JR.
UNITED STATES ATTORNEY
EASTERN DISTRICT OF KENTUCKY

Date: 1/6/2020     By: _____
Kathryn M. Anderson
Assistant United States Attorney
Eastern District of Kentucky

Date: 1/13/2020   _____
Timothy C. Flowers
Senior Trial Attorney

Computer Crimes and Intellectual
Property Section

R. ANDREW MURRAY
UNITED STATES ATTORNEY
WESTERN DISTRICT OF NORTH CAROLINA

Date: 1/8/2020   By: *[signature]*
Taylor Phillips
Assistant United States Attorney
Western District of North Carolina

Date: 01.03.2020   *[signature]*
Adrian Mitan
Defendant

Date: 1/3/20   *[signature]*
Robert Abell
Attorney for Defendant

## ATTACHMENT A:

## STATEMENT OF FACTS

*The USAO-EDKY, USAO-WDNC, CCIPS, and Defendant Adrian Mitan stipulate and agree that if this case proceeded to trial, the United States would prove the facts set forth below beyond a reasonable doubt. They further stipulate and agree that these are not all of the facts that the United States would prove if this case had proceeded to trial.*

### Charged Conduct-EDKY
### A. Online Auction Fraud

The Defendant, Adrian Mitan, is a Romanian national from Galati, Romania. He used the following online monikers: "ABCD0," "xpladrian," and "daucufurka". He was associated with the Alexandria Online Auction Fraud ("AOAF") Network, an enterprise as defined by 18 U.S.C. § 1961(4), through Livui Sorin Nedelcu and Dmitrious Antoine Brown.

On or about January 12, 2016, the Defendant, through online chat, communicated with an individual about converting funds to bitcoin. This individual was a Confidential Source ("CS") for the United States, who at all relevant times was operating in the Eastern District of Kentucky.

Working in conjunction with others, the Defendant used the internet to post advertisements for goods to sales websites, including Craigslist. The Defendant took over several Craigslist accounts to use to post advertisements. When the Defendant and his coconspirators had convinced victims to purchase the falsely advertised goods, they sent the victims invoices for payment that appeared to be from legitimate sellers, which often contained the trademarks of real companies.

Once the Defendant and his coconspirators convinced victims to purchase and provide payment for a falsely advertised item, the Defendant reached out to the CS, and others in the United States who provided money laundering services similar to the CS, to convert the victim payment to bitcoin. The Defendant knew the funds he transferred to the CS constituted the proceeds of unlawful activity.

In accordance with the Defendant's instructions, the CS would launder the proceeds of fraud by exchanging fraud proceeds into bitcoin. Specifically, the CS, located in the United States, sent the Defendant, located in Romania, bitcoin to bitcoin addresses belonging to the Defendant in exchange for fraud proceeds. The Defendant engaged in this scheme from at least May 11, 2016, until at least July of 2016. This scheme concealed the source, nature, ownership and control of the fraud proceeds. The Defendant knew of the scheme's unlawful purposes and voluntarily joined it.

The Defendant worked with other European-based members of the AOAF Network, including Livui Sorin Nedelcu, in furtherance of the scheme. Together, from a period of May 2016 until the date of the indictment (for case 5:18-CR-81), Nedelcu and the Defendant are responsible for a substantial loss for their participation in the money laundering conspiracy related to the online auction fraud.

### B. Brute-Force Attack

Additionally, the Defendant was involved in a credit card fraud scheme that involved phishing for credit card information from victims, brute-force attacking point of sale systems, and using unauthorized access devices to withdraw substantial sums from financial institution Automated Teller Machines (ATMs).

One such financial institution at which the Defendant participated in phishing customer information was First Technology Federal Credit Union ("FTFCU") on February 17 and 18, 2016. To retrieve the hidden information on those same cards, he ran thousands of credit/debit card purchases or balance inquiries through point-of-sale systems he or his coconspirators had hacked, until the transaction or inquiry was successful – an indication that he had all the necessary credit card information. Then, he and his coconspirators applied the credit/debit card information to blank cards with magnetic stripes, in order to create clone credit/debit cards. With these, the Defendant and his coconspirators could withdraw money from victim accounts at ATMs. For example, on February 20 and 21, 2016, coconspirators withdrew approximately $61,000 from 75 debit cards cloned from the FTFCU customers mentioned above, at ATMs located in Queens and Flushing, New York and Walmart, Shell Gas Station, and Walgreen's in Macon, Georgia.

After retrieving cash from ATMs, the Defendant's coconspirators converted the money to bitcoin, or otherwise and at the direction of the Defendant, transferred the money overseas, where the Defendant resided.

The Defendant laundered approximately $9,840 of the $61,000 worth of fraud proceeds through the Eastern District of Kentucky, by using the CS in the same manner as described in the previous section.

The Defendant further admits to obtaining and possessing credit card information from customers of various financial institutions. This resulted in the Defendant possessing the information for roughly 16,000 unique credit/debit card, including debit/credit card account numbers, tracking numbers, PINs, and dates of expiration.

### Charged Conduct-WDNC

The Defendant, Adrian Mitan, is a Romanian national from Galati, Romania. He used the following online monikers: "Adi Calerderas," "daucuvar," "XPL", and "XPL.NY".

With co-conspirators, the Defendant was involved in a Voice-over Internet Protocol phishing or "vishing" conspiracy. The vishing conspirators compromised Voice over Internet Protocol (VoIP) systems. They then used the compromised VoIP systems to gather debit/credit card numbers and PINs of "vished" bank and credit union customers. Finally, they used the fraudulently gathered credentials to trick the victims' banks and credit unions into transferring funds to the conspirators.

The first step in executing the scheme was to hack into the VoIP systems of one or more small businesses or organizations that lacked strong VoIP security. At least one of the computers with a VoIP system that the conspirators compromised was located in Charlotte, North Carolina, within the Western District of North Carolina.

After conspirators hacked into and compromised a VoIP system, they injected scripts which generated thousands of automated message calls to people living in specific area codes matching the location of selected banks and credit unions. The conspirators' pre-recorded robo-call vishing messages falsely warned call recipients that their debit/credit card accounts at targeted victim banks had been compromised. The fraudulent vishing messages instructed victim recipients to enter their debit card numbers, expiration date, PIN, and/or CVV numbers purportedly to verify their account to prevent account suspension.

After vishing victims entered the requested information, the conspirators cloned the data onto magnetic-stripe cards. They then used the cloned debit cards and PINs to withdraw as much cash as possible from the banks' ATM terminals.

The conspirators fraudulently obtained, and it was reasonably foreseeable to the Defendant that they would obtain, at least 2,130 debit card numbers during the conspiracy. Each of these was a counterfeit access device or unauthorized access device within the meaning of U.S.S.G. § 2B1.1, Application Note 3(F)(i).

More than ten federally insured financial institutions suffered pecuniary harm resulting from the conspiracy, and it was reasonably foreseeable to the Defendant that they would do so.

A substantial part of the fraudulent scheme was committed from Romania.

The Defendant's role in the vishing conspiracy was to: 1) provide his conspirators with bank or credit union customers who were vulnerable to the vishing bank fraud scheme; 2) compromise vulnerable computers hosting VoIP systems; 3) initiate vishing campaigns; 4) provide technical advice to conspirators that increased the effectiveness of the vishing; 5) collect debit card numbers and PINs of victims; 6) make or cause to be made magnetic-stripe cards re-encoded with the victims' fraudulently obtained debit card numbers; and 7)

travel to ATMs and withdraw money from the victims' accounts.

I have read the statement of facts and have carefully reviewed it with my attorney. I acknowledge that it is true and correct.

_01·03·2020_  
Date

_____  
ADRIAN MITAN  
Defendant

I am Adrian Mitan's attorney. I have carefully reviewed the Statement of Facts with him.

_1/3/20_  
Date

_____  
Robert Abell  
Attorney for Adrian Mitan